Filed 1/5/24  In re J.S. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re J.S. et al., Persons Coming Under the Juvenile Court Law. | |
| TULARE COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>C.A.,<br><br>Defendant and Appellant. | F086780<br><br>(Super. Ct. Nos. JJV73234D, JJV73234E, JJV73234F)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Tulare County.  Hugo J. Loza, Judge.

Amy Z. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Jennifer M. Flores, County Counsel, and Amy-Marie Costa, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P. J., Snauffer, J. and DeSantos, J.

Appellant C.A. (mother) is the mother of now 10-year-old J.S., nine-year-old Je.S., and seven-year-old J.G. (collectively, the children), who are the subjects of this dependency case. Mother challenges the juvenile court's order terminating her parental rights at a Welfare and Institutions Code[1] section 366.26 hearing. Mother's sole claim is that the court and Tulare County Health and Human Services Agency (agency) failed to comply with the duty of inquiry under the Indian Child Welfare Act (ICWA). We agree with respect to the inquiry into J.G.'s ancestry and conditionally reverse the court's order terminating parental rights and remand for proceedings to ensure ICWA compliance.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

In October 2021, the agency received two referrals alleging physical abuse of J.S. A social worker responded to the home and both J.S. and Je.S. disclosed physical abuse by mother. Mother refused to comply with multiple requests to drug test until she tested positive for methamphetamines on October 29, 2021. On November 10, 2021, mother forgot to pick up the children from the bus stop after school, and J.S. disclosed that mother was always drinking and doing drugs with her boyfriend. A team decision-making meeting was held on December 21, 2021, but mother did not attend. The children and their one-year-old sister, J.A., were taken into protective custody pursuant to a warrant on December 23, 2021. Their 14-year-old brother, S.A., was living with the maternal grandmother, and there was a plan to transport him into placement on December 27, 2021.

The agency filed a petition alleging the children, S.A., and J.A. were described by section 300, subdivisions (a), (b)(1), and (j). The petition alleged the children were at substantial risk of suffering serious physical harm as a result of mother's inappropriate

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2]     The sole issue on appeal concerns ICWA; therefore, we primarily restrict our facts to those bearing on that issue.

discipline and substance abuse. The petition further alleged that two siblings, Nathaniel S. and Robert A., were adjudged dependents in February 2021 and October 2021, due to mother's substance abuse. Mother's family reunification services for Nathaniel were terminated in August 2021, and Nathaniel was placed with his father under a plan of family maintenance. A six-month review hearing was scheduled for Robert on April 15, 2022. The agency's detention report indicated ICWA was not applicable, and it noted the juvenile court's previous finding that ICWA was not applicable regarding Nathaniel on March 23, 2021.

At the detention hearing held on December 28, 2021, mother was present and appointed counsel. The juvenile court directly inquired of mother regarding the children's paternity. Mother testified that Je.S. visited family members of her father, K.S., for Thanksgiving, and there were occasional visits between Je.S. and her paternal grandmother. K.S. was found to be the biological father of Je.S. based upon a judgment of paternity. J.G.'s father, A.G., was found to be her presumed father based upon his name being listed on the birth certificate.

In response to the juvenile court's inquiry regarding potential Indian[3] ancestry in her family, mother testified, "Yes, but we're only state recognized, not federal. I do have family members that are federally recognized." Mother then identified "Wuksachi, Chukchansi" as the tribes she was associated with. Counsel for the agency did not ask additional questions because the same inquiry was previously completed during Robert and Nathaniel's cases. Mother did not believe that any of the children's fathers had Indian ancestry, and the court found ICWA was not applicable. The children were

---

[3] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

ordered detained from the physical custody of mother, and a jurisdiction and disposition hearing was set for February 8, 2022.

The agency's jurisdiction and disposition report, dated February 4, 2022, recommended that the juvenile court find the allegations in the petition true and order family reunification services be provided to mother. J.S. and Je.S. were placed in the home of J.S.'s paternal grandmother, and J.G. was placed in the home of her paternal uncle with Robert.

The ICWA status section of the report detailed the agency's previous inquiry in August 2021. On August 30, 2021, mother reported that she was "part of the Choinumni Nation, the Tachi Nation, and the Chukchansi Nation." Mother indicated that she was not a registered tribal member of any of those tribes. On September 14, 2021, mother and maternal grandmother informed the social worker that they had Indian ancestry through "Chukchansi, Choinumni, Tachi and Wuksachi Tribes." Mother stated there were no family members enrolled in any of the tribes. The Choinumni and Wuksachi tribes were determined to be non-federally recognized tribes, and there was no contact information available online for the tribes. Mother and maternal grandmother had no contact information for those tribes, and information was sent to the Bureau of Indian Affairs (BIA). On October 12, 2021, ICWA notice forms (ICWA-030) were mailed, and responses were still pending.

In an addendum report, filed on February 7, 2022, the social worker included updates on efforts to locate A.G. and K.S. The social worker met with A.G.'s mother at a residence, and she left a business card with information regarding the upcoming hearing. A.G. called the social worker later in the day and said he wanted J.G. to remain with the paternal uncle. The social worker also contacted K.S. at a residence, and he was informed about J.S.'s removal and the upcoming hearing.

On February 8, 2022, mother and A.G. were both present for the initial jurisdiction and disposition hearing. A.G. was arraigned on the petition, and his counsel entered a

4.

denial on his behalf. A request by mother's counsel to continue the hearing was granted. The reporter's transcript of the hearing did not reflect any inquiry of A.G. regarding possible Indian ancestry. However, a section of the clerk's minute order preceded by procedural steps taken by A.G.'s counsel states, "The [c]ourt inquires of the parent as to Native American [a]ncestry; the [c]ourt finds ICWA does not apply."

At the continued jurisdiction and disposition hearing held on March 1, 2022, mother and A.G. were both present and submitted on the agency's recommendations. The juvenile court found the allegations in the petition true, ordered family reunification services to mother and A.G., and set a six-month review hearing for August 16, 2022.

The six-month status review report recommended that family reunification services be continued for both mother and A.G. Mother missed most of her random drug tests, and she provided positive results for drugs on four of the five samples submitted. The ICWA status section of the report reiterated the information from the prior report and stated there were no new claims of Indian ancestry. At a continued six-month review hearing held on September 27, 2022, family reunification services were continued for both mother and A.G. A 12-month review hearing was set for February 14, 2023.

The agency's report for the 12-month review hearing recommended family reunification services be terminated for mother and A.G. After multiple continuances, a contested 12-month review hearing was held on April 17, 2023. Mother was present for the hearing, and her counsel argued for additional family reunification services. After hearing argument from counsel, the juvenile court proceeded to terminate family reunification services for mother and A.G., and a section 366.26 hearing was set on August 21, 2023.

The report for the section 366.26 hearing recommended that parental rights of mother and all fathers be terminated and a plan of adoption be selected. J.S. and Je.S. remained placed together in the home of J.S.'s paternal grandmother, who was committed to a plan of adoption. J.G. remained placed with Robert in the home of her paternal uncle

and aunt, who were also committed to providing a plan of adoption. The ICWA status section of the report provided no new information regarding the agency's inquiry into the children's potential Indian ancestry.

In an addendum report, filed on August 15, 2023, the agency provided information regarding its inquiry of the children's care providers regarding Indian ancestry. J.S.'s paternal grandmother reported that she did not have any Indian ancestry when questioned by the social worker on August 14, 2023. On that same date, J.G.'s paternal aunt and uncle denied having any Indian ancestry. At a contested section 366.26 hearing held on August 16, 2023, mother was present and objected to the agency's recommendation. The juvenile court found ICWA was not applicable, and it terminated the parental rights of mother and all fathers of the children.

## DISCUSSION

Mother contends the juvenile court's finding that ICWA did not apply was not supported by substantial evidence because the agency failed to comply with its duty of initial inquiry.[4] Mother argues the record is insufficient to support the court's ICWA finding because no inquiry was completed of A.G. Mother also argues that the agency's failure to attempt contact with Je.S.'s paternal relatives was prejudicial error.

### A. *Legal Principles*

ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court, except in emergencies, must follow before removing an Indian child from his or her family. (25 U.S.C. § 1902; see *In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8.) In any "proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's

---

[4] Mother acknowledges that the agency conducted an adequate inquiry regarding J.S.'s family members.

6.

tribe … have a right to intervene" (25 U.S.C. § 1911(c)), and may petition the court to invalidate any foster care placement of an Indian child made in violation of ICWA (25 U.S.C. § 1914; see § 224.2, subd. (e)). An "Indian child" is defined in ICWA as an unmarried individual under 18 years of age who is either (1) a member of a federally recognized Indian tribe, or (2) is eligible for membership in a federally recognized Indian tribe and is the biological child of a member of a federally recognized tribe. (25 U.S.C. § 1903(4) & (8); see § 224.1, subd. (a) [adopting federal definitions].)

In every dependency proceeding, the agency and the juvenile court have an "affirmative and continuing duty to inquire whether a child is or may be an Indian child .…" (Cal. Rules of Court, rule 5.481(a);[5] see also § 224.2, subd. (a); *In re W.B.* (2012) 55 Cal.4th 30, 53; *In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1165.) The continuing duty to inquire whether a child is or may be an Indian child "can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.)

The initial duty to inquire arises at the referral stage when the reporting party is asked whether it has "any information that the child may be an Indian child." (§ 224.2, subd. (a).) Once a child is received into temporary custody, the initial duty to inquire includes asking the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the child is, or may be, an Indian child. (§§ 224.2, subd. (b), 306, subd. (b).) The juvenile court has a duty at the first appearance of each parent to ask whether he or she "knows or has reason to know that the child is an Indian child." (§ 224.2, subd. (c).) The court must also require each parent to complete form ICWA-020. (Rule 5.481(a)(2)(C).)

Next, a duty of further inquiry arises when the agency or the juvenile court has "reason to believe" the proceedings involve an Indian child but "does not have sufficient

---

[5]     All further rule citations are to the California Rules of Court.

information to determine that there is reason to know that the child is an Indian child ….” (§ 224.2, subd. (e).)  As recently clarified by the Legislature, a “reason to believe” exists when the court or agency “has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe.”  (§ 224.2, subd. (e)(1).)

If there is reason to believe an Indian child is involved, the juvenile court or the agency “shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.”  (§ 224.2, subd. (e).)  Further inquiry includes, but is not limited to, “[i]nterviewing the parents, Indian custodian, and extended family members,” and contacting the BIA, the State Department of Social Services, and the tribes and any other person who may have information.  (§ 224.2, subd. (e)(2)(A)– (C).)

The final duty component arises when the court or agency has “reason to know” the child is an Indian child.  (*In re D.F.*, *supra*, 55 Cal.App.5th at p. 567.)  A “ reason to know” exists if one of the following circumstances is present:  “(1) A person having an interest in the child … informs the court that the child is an Indian child[;] [¶] (2) The residence … of the child [or] the child’s parents … is on a reservation or in an Alaska Native village[;] [¶] (3) Any participant in the proceeding … informs the court that it has discovered information indicating that the child is an Indian child[;] [¶] (4) The child … gives the court reason to know that the child is an Indian child[;] [¶] (5) The court is informed that the child is or has been a ward of a tribal court[;] [or] [¶] (6) The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe.”  (§ 224.2, subd. (d)(1)−(6).)

If the juvenile court makes a finding that proper and adequate further inquiry and due diligence have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that ICWA does not apply, subject to reversal if the court subsequently receives information providing reason to believe the child is an

Indian child. If the court receives such information, it must direct the social worker or probation officer to conduct further inquiry. (§ 224.2, subd. (i)(2).)

**B.    *Standard of Review***

"The juvenile court's finding that ICWA does not apply to the proceeding rests on two elemental determinations, 'subject to reversal based on sufficiency of the evidence.' " (*In re K.H.* (2022) 84 Cal.App.5th 566, 601 (*K.H.*), quoting § 224.2, subd. (i)(2).) First, "[t]he court must find there is 'no reason to know whether the child is an Indian child,' which is dependent upon whether any of the six circumstances set forth in subdivision (d) of section 224.2 apply." (*K.H.*, at p. 601.) Second, "[t]he juvenile court must … find a 'proper and adequate further inquiry and due diligence .…' " (*Ibid.*)

Under the substantial evidence standard, " 'a reviewing court should "not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." [Citation.] The determinations should "be upheld if … supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence." ' [Citations.] The standard recognizes that '[t]rial courts "generally are in a better position to evaluate and weigh the evidence" than appellate courts' [citation], and 'an appellate court should accept a trial court's factual findings if they are reasonable and supported by substantial evidence in the record' [citation]. '[I]f a court holds an evidentiary hearing, it may make credibility determinations, to which an appellate court would generally defer.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601.)

The juvenile court's finding on the second element, however, "is ultimately discretionary because it requires the juvenile court to 'engage in a delicate balancing of' various factors in assessing whether the agency's inquiry was proper and adequate within the context of ICWA and California law, and whether the agency acted with due diligence." (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting *In re Caden C.* (2021)

11 Cal.5th 614, 640.)  Therefore, we employ a hybrid standard and review the court's determination for substantial evidence and abuse of discretion.  (*K.H.*, at p. 601.)

" 'Review for abuse of discretion is subtly different [from review for substantial evidence], focused not primarily on the evidence but the application of a legal standard.  A court abuses its discretion only when " ' "the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' "  [Citation.]  But " ' "[w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court[.]" ' "  [Citations.]  [¶]  While each standard here fits a distinct type of determination under review, the practical difference between the standards is not likely to be very pronounced.' "  (*K.H.*, *supra*, 84 Cal.App.5th at p. 602.)

"Review of the juvenile court's findings under the foregoing standards is deferential, but 'an appellate court [nevertheless] exercises its independent judgment to determine whether the facts satisfy the rule of law.'  [Citations.]  Where the material facts are undisputed, courts have applied independent review to determine whether ICWA's requirements were satisfied."  (*K.H.*, *supra*, 84 Cal.App.5th at p. 602.)

### C.     *Analysis*

### *Adequacy of Initial Inquiry*

In the present case, mother and the maternal grandmother informed the agency that their family had Indian ancestry through non-federally recognized tribes.  The agency sent notice with the maternal family's information to the BIA.  A.G., the father of J.G., appeared in court for multiple hearings, and the clerk's transcript contains a reference to an inquiry of "the parent" during father's first appearance in the proceedings.  However, the reporter's transcript reflects no inquiry of A.G. regarding potential Indian ancestry, and the record does not contain a completed ICWA-020 form by A.G. or his counsel.

Under the circumstances, we conclude the reporter's transcript is more reliable because there is also no indication that A.G. completed an ICWA-020 form as required by rule 5.481(a)(2). (See *People v. Carter* (2003) 30 Cal.4th 1166, 1199 ["[W]here the clerk's and reporter's transcripts conflict, the latter controls when, under the circumstances, it is the more reliable."].) Therefore, we conclude the agency failed in its duty of initial inquiry as to J.G., and we consider whether that error was prejudicial in the section below.

Next, mother argues that the agency only made an inquiry of J.G.'s paternal aunt, who was related to J.G. solely through marriage. The brother of A.G., J.G.'s paternal uncle, had placement of J.G. throughout the proceedings. The agency's addendum report states as follows: "the [social worker] asked both resource parents (paternal uncle) and aunt for [J.G.] if she has Native American Ancestry. The resource parent reported she did not have Native American ancestry." We acknowledge that the report does not explicitly state which of A.G.'s resource parents responded to the social worker's inquiry. However, we agree with the agency that a reasonable inference can be made that the paternal uncle denied having any Indian ancestry, given its explicit statement that he was asked in the addendum report. (See *In re Charlotte V.* (2016) 6 Cal.App.5th 51, 57 [" ' "On review of the sufficiency of the evidence, we presume in favor of the order, considering the evidence in the light most favorable to the prevailing party, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in support of the order." ' "].)

Finally, there is no evidence that any of Je.S.'s paternal family members were available for the agency to interview. K.S. made no appearances throughout the proceedings, and the agency's reports do not indicate that any of Je.S.'s paternal family members were contacted or identified as potential placements. Mother contends that her description of previous visits between Je.S. and her paternal grandmother required the agency to make attempts to locate and interview the paternal grandmother and other

11.

unidentified paternal relatives. Mother denied having any knowledge that the father of Je.S. had Indian ancestry, and there is no evidence in the record that she provided contact information for Je.S.'s paternal grandmother or other paternal relatives such that they were available to the agency.

Without such information being placed on the record, we can reasonably infer that the agency was unable to obtain information on paternal relatives of Je.S. who would shed light on her family's ancestry. (See *In re I.J.* (2013) 56 Cal.4th 766, 773 [" ' "we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations" ' "].) This differs significantly from cases such as *In re I.F.* (2022) 77 Cal.App.5th 152, where the parent challenged the child welfare agency's failure to obtain biographical information from a relative who was available and already interviewed by social workers. Here, the agency had no duty to locate Je.S.'s paternal relatives without knowledge that available paternal relatives had meaningful information regarding claimed Indian ancestry. (See, e.g., *In re Michael V.* (2016) 3 Cal.App.5th 225, 235 [agency made no effort to locate and interview children's maternal grandmother "even though it was she who reportedly had the direct link to a tribe"].) Thus, we find no error in relation to the agency's inquiry of Je.S.'s family members concerning Indian ancestry.

### *Prejudicial Error*

The appellate courts are divided on what showing of prejudice warrants reversal for ICWA errors stemming from an initial inquiry, and the issue is currently pending before our Supreme Court. (See *In re Dezi C.* (2022) 79 Cal.App.5th 769, 774, review granted Sept. 21, 2022, S275578 (*Dezi C.*) [deficient initial inquiry harmless unless record contains information suggesting a reason to believe that the child may be an "Indian child" within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding]; *In re A.C.* (2022) 75 Cal.App.5th 1009,

12.

1011 (*A.C.*) [deficient initial inquiry mandates reversal]; *In re A.C.* (2021) 65 Cal.App.5th 1060, 1069 [deficient initial inquiry harmless unless parent proffers Indian ancestry on appeal]; *Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 744–745 [deficient initial inquiry harmless unless record indicates there was readily obtainable information likely to bear meaningfully upon whether the child is an Indian child]; *K.H.*, *supra*, 84 Cal.App.5th at p. 610 [deficient initial inquiry harmless unless "the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due diligence"].)

In the context of inquiry pursuant to ICWA, prejudicial error has generally been determined based upon the deficient inquiry's impact on the information necessary for a tribal determination of a child's Indian status. (See, e.g., *In re I.W.* (2009) 180 Cal.App.4th 1517, 1531 [no prejudicial error where "mother does not suggest how the supposed deficiencies she notes would have made a difference given the information that was in the notices"]; *In re Charlotte V.*, *supra*, 6 Cal.App.5th at p. 58 [no prejudicial error from agency's failure to gather additional information from family members]; *In re Breanna S.* (2017) 8 Cal.App.5th 636, 654 [prejudicial error found where reviewing court "[could not] say with any degree of confidence that additional information concerning [a] relative … would not have altered the tribe's evaluation"].)

First, we acknowledge that some courts have concluded an agency's deficient inquiry is generally prejudicial when the record is inadequate because of the agency's failure to document its inquiries. (See *In re K.R.* (2018) 20 Cal.App.5th 701, 708–709; see also *In re N.G.* (2018) 27 Cal.App.5th 474, 483.) The courts in *In re Antonio R.* (2022) 76 Cal.App.5th 421 and *In re H.V.* (2022) 75 Cal.App.5th 433 adopted similar standards in relation to the initial inquiry, holding that the agency's failure to interview extended family members during its initial ICWA inquiry was prejudicial error and therefore either (1) reversible per se (*H.V.*, at p. 438) or (2) above such a low bar for prejudice that it was reversible in most circumstances (*Antonio R.*, at pp. 435−436).

13.

Next, there is another line of cases that concludes reversal is not warranted where the appellant failed to establish a miscarriage of justice by making an offer of proof or other affirmative assertion of Indian ancestry on appeal. (See, e.g., *In re A.C.*, *supra*, 65 Cal.App.5th at p. 1069; *In re Noreen G.* (2010) 181 Cal.App.4th 1359, 1388; *In re N.E.* (2008) 160 Cal.App.4th 766, 770; *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1431 [asserted failure to ask father whether he had Indian ancestry was harmless where father did not "make an affirmative representation of Indian heritage" on appeal].) However, this approach to harmless error is not applicable in the present case because mother already made a claim of Indian ancestry in the juvenile court.

Several appellate courts have held that reversal from an error in inquiry is prejudicial when the record indicates there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child. (*Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 744–745; *A.C.*, *supra*, 75 Cal.App.5th 1009, 1017 [applying *Benjamin M.* court's standard for prejudice].) In *Benjamin M.*, one parent was not available to report or deny Indian heritage, and the agency never inquired of any of the missing parent's available relatives. (*Benjamin M.*, at pp. 744–745.) The appellate court conditionally reversed to permit the agency to inquire with the father's brother, who was accessible to the agency. (*Id*. at pp. 745–746.) Under this approach, continued inquiry is required "where the probability of obtaining meaningful information is reasonable in the context of ICWA." (*Id*. at p. 744.)

The court in *Dezi C.* took yet another approach, concluding initial inquiry errors require reversal where a reviewing court would have " 'reason to believe' further inquiry might lead to a different result[.]" (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 779, review granted.) The appellate court illustrated an example of its rule as follows: "a reviewing court would have 'reason to believe' further inquiry might lead to a different result if the record indicates that someone reported possible American Indian heritage and the agency never followed up on that information; if the record indicates that the agency never

14.

inquired into one of the two parents' heritage *at all* (e.g., *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 740); or if the record indicates that one or both of the parents is adopted and hence their self-reporting of 'no heritage' may not be fully informed (e.g., [*A.C.*], *supra*, 75 Cal.App.5th at pp. 1015–1016)." (*Ibid.*)

Another approach articulated by a panel in this appellate court district in *K.H.*, *supra*, 84 Cal.App.5th 566 and *In re E.C.* (2022) 85 Cal.App.5th 123 (*E.C.*) explained their decision not to follow the approaches articulated by other appellate courts for determining whether ICWA error requires reversal and concluded that the Supreme Court's decision in *In re A.R.* (2021) 11 Cal.5th 234 supplies the appropriate framework for assessing prejudice in this context. We recognize the difficulty in assessing the effect that obtaining potentially unknown information would have on the court's ICWA finding. That is why a flexible, case-by-case approach is most appropriate in this context because there are a number of circumstances that can potentially undermine the court's ICWA determination.

Under any of the lines of cases requiring an appellant to affirmatively demonstrate prejudice, we would conclude that the juvenile court's error was prejudicial. The court, at a minimum, should have ensured that an inquiry was completed of J.G.'s father. A.G. was readily available to both the court and agency since he appeared in court for multiple hearings. The court failed to have A.G. complete an ICWA-020 form, and the agency had only one other paternal relative to contact regarding potential Indian ancestry. Although the paternal uncle denied Indian ancestry, there is no indication in the record to suggest he was fully informed of A.G.'s family ancestry.

In sum, the error in initial inquiry is prejudicial under any of the differing standards currently utilized by the courts of appeal for harmless error. Under the "automatic reversal" approach, reversal would clearly be required. Under *Benjamin M.*, the agency's failure to inquire of A.G. meant that the agency lacked "readily obtainable" information about J.G.'s Indian ancestry, which was "likely to bear meaningfully upon

whether" J.G. was an Indian child. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) The absence of that information was directly relevant to the juvenile court's ICWA determination because there existed a reasonable chance that A.G. would have provided information affecting the outcome of the agency's initial inquiry.

The error would also be prejudicial under *Dezi C.* because the agency "never inquired into one of the two parents' heritage at all." (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 779, italics omitted, review granted.) Finally, the "opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child" was lost because the agency failed to inquire of J.G.'s father. (*K.H.*, *supra*, 84 Cal.App.5th at p. 610.) Under this standard, too, the error here cannot be found harmless. Therefore, we conclude the juvenile court's finding ICWA did not apply to J.G. was supported by insufficient evidence and limited remand is required.

## DISPOSITION

The judgment is affirmed as to J.S. and Je.S and conditionally reversed as to J.G.

The finding that ICWA does not apply to J.G. is conditionally reversed, and the matter is remanded to the juvenile court with directions to order the agency to comply with the inquiry provisions set forth in section 224.2.

If, after the juvenile court finds adequate inquiry has been made consistent with the reasoning in this opinion, the court finds ICWA applies to J.G., the court shall vacate its existing order and proceed in compliance with ICWA and related California law. If the court finds ICWA does not apply to J.G., the finding that ICWA does not apply to the case shall be reinstated.

16.